## In Re Anonymous No. 81 D.B. 82

Disciplinary Docket Board No. 81 D.B. 82.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

KECK, Member, February 22, 1984 — Pursuant to Rule 208(d)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your Honorable Court with respect to the above mentioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was born in 1920, was admitted to the Bar of this Commonwealth in 1950, and practiced as a sole practitioner throughout his career. Upon recommendation of this Board he was suspended for one year by order of the Supreme Court dated September 25, 1980, docketed at No. 308 Disciplinary Docket No. 1, Supreme Court, No. 42D.B.80, Disciplinary Board.

The instant petition for discipline was filed December 8, 1982. It charges respondent with violation of seven Disciplinary Rules by having neglected a client's case, to wit:

A. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

B. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

C. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

D. D.R. 6-101(A)(3): A lawyer shall not neglect a matter entrusted to him;

E. D.R. 7-101(A)(1); A lawyer shall not intentionally fail to seek the lawful objectives of his client;

F. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

G. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

The matter was referred to hearing committee [    ] on January 7, 1983. Hearings were held March 15, 1983 and April 19, 1983. Respondent was represented by counsel. Both respondent and petitioner submitted memoranda in support of their positions. The report of the hearing committee was filed December 27, 1983 concluding that respondent violated Disciplinary Rules as charged in D, E, F, and G above and recommending that respondent be suspended for a period of 12 months to run concurrently with the period of suspension commencing September 25, 1981 as ordered by the Supreme Court of Pennsylvania in 42D.B.80.

No exceptions were filed by respondent or by Disciplinary Counsel.

The matter was adjudicated by the board January 25, 1984. The board accepted the report of the hearing committee, including the findings of fact and conclusions of law, but recommends that respondent be suspended from the practice of law for a period of twelve months beginning upon expiration of the period of suspension commencing September 25, 1981 as ordered by the Supreme Court in 42D.B.80.

## STATEMENT OF THE CASE AND FINDINGS OF FACT

The findings of fact contained in the report of the hearing committee provide a compendious statement of the case. They are quoted below:

1. On or about December 24, 1970, [A] was struck and injured by an automobile driven by [B] near [    ], [     ] County, Pa.

2. [B] was insured by the [     ] Automobile Insurance Company.

3. The parents of [A], [C] and [D], met with respondent in the summer of 1971 and requested that he undertake the representation of their son and themselves relative to the matter of his being injured in the automobile accident by [B].

4. Respondent agreed to undertake such representation.

5. On December 18, 1972, respondent filed a praecipe for a writ of summons and the writ was issued on that same day.

6. The sheriff of [     ] County received no instructions from respondent to serve the writ, and in fact, the writ of summons in trespass was never served.

7. No further official action was taken with regards to the [A] case in the Court of Common Pleas of [     ] County until March 1, 1976, when the case was dismissed by the court since no good cause had been shown for continuing the case. Respondent never notified his clients of the dismissal of their cause of action.

8. In March of 1975, and on several occasions thereafter, the attorney for the collection agency of the [     ] Hospital contacted respondent in an effort to obtain payment of some outstanding medical bills incurred in the treatment of [A].

9. On March 2, 1976, having received no satisfaction in their dealings with respondent, the [E] — Credit and Collection (the organization that served as a collection agency for various hospitals) instituted suit against [C] and [D], the parents of [A], to re-

cover the outstanding indebtedness owed to the [ ] Hospital.

10. On March 17, 1976, respondent sent his own personal check to the attorney, [F], Esq., in full settlement of the claim being made on behalf of [ ] Hospital against the [As].

11. Respondent never obtained the permission of his clients to settle the matter, nor to advance his own funds to do so, and, in fact, respondent never advised his client of anything regarding the actions that he had taken relative to the hospital bill.

12. On many, many occasions the [As] attempted to contact respondent relative to the progress, or lack of progress, of their case, but without success.

13. On the few occasions that the [As] were able to contact respondent he assured them that he would work on the case and bring it to a conclusion.

14. Subsequent to the statements made by respondent to his clients that he would take action with regard to their case, he failed to do so.

## DISCUSSION

Respecting Fact No. 6, respondent testified that he could not instruct the sheriff where to serve the writ because, despite making some inquiries, he did not know the whereabouts of [B]. It seems clear, however, from his answers to Disciplinary Counsel's questions that his efforts to locate [B] were minimal.

Respecting Fact No. 7, respondent testified that he was not aware that the case had been dismissed until the beginning of these disciplinary proceedings, that he was unaware of Rule 1901 or of [ ] County Rule 1A which provides for dismissal of inactive cases.

The hearing committee reported in part:

"The Respondent gave the Hearing Committee the impression that he was not at all familiar with the proper way to handle a negligence case and, in fact, the Respondent himself testified that on numerous past occasions he had referred out to other attorneys cases such as the [A's]. For the foregoing reasons the Hearing Committee believed that the Respondent intentionally failed not only to seek the lawful objectives of his clients and carry out his contract of employment but also intentionally prejudiced their position by costing them their day in court and depriving them of recompense for the injuries sustained by [A].

"On the other hand, the Panel was convinced that, although there was feeling that the Respondent was avoiding his clients, when he did speak with them his promises of doing the work that was necessary were sincere. That is to say, the conclusion of the Panel was to the effect that his promises of performing, relative to the matter entrusted to him, were sincere and genuine at the time made but he failed to carry through on those promises. The Panel believed that he did not deliberately engage in dishonesty, deceit, or misrepresentation. The Respondent testified that he was unaware of the termination of the lawsuit and that when he paid the hospital bill for [A] he fully believed that he would be able to recover that sum of money when the case was ultimately settled with the insurance company. The Panel came to the conclusion that there was not sufficient evidence to support the contention of disciplinary counsel that the payment of the hospital bill was a deliberate attempt to hide from the [As] the fact that the case had been terminated and that there was not ever going to be a recovery for them.

"Therefore, in summary, the Panel feels that the Respondent was guilty of neglect but that he did not engage in dishonesty, fraud, deceit, or misrepresentation and that his acts of omission did not rise to the level of being conduct that was prejudicial to the administration of justice nor that that conduct adversely reflected on his fitness to practice law."

The matter docketed at 42D.B.80 originated as a case of neglect that occurred contemporaneously with the case at hand. Respondent was ordered to appear for a private reprimand, but failed to heed the order or to respond otherwise to communications from the Disciplinary Board. In consequence he was charged with additional disciplinary violations which gave cause for his suspension.

At the hearing held April 19, 1983 considerable testimony was addressed respecting respondent's emotional and mental state in 1979, '80, '81 at the time of the prior disciplinary action.

Respondent and members of his family have suffered severe illness. He has skin cancer, his wife has Parkinson's disease, a young daughter suffered an ovariectomy. These illnesses all occurring at about the same time caused severe mental anguish and occupied respondent's attention to the exclusion of all other matters during the years 1979, '80, and '81, but they do not account for his neglect of his client's case from 1972 onward.

## CONCLUSIONS OF LAW

The Disciplinary Board accepts the conclusions of law listed in the report of the hearing committee, namely:

A. Respondent has not violated D.R. 1-102(A)(4) in that he did not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

B. Respondent has not violated D.R. 1-102(A)(5) in that he did not engage in conduct that was prejudicial to the administration of justice.

C. Respondent has not violated D.R. 1-102(A)(6) in that he did not engage in any other conduct that adversely reflected upon his fitness to practice law.

D. Respondent has violated D.R. 6-101(A)(3) in that he has neglected a matter entrusted to him.

E. Respondent has violated D.R. 7-101(A)(1) in that he has intentionally failed to seek the lawful objectives of his client.

F. Respondent has violated D.R. 7-101(A)(2) in that he intentionally failed to carry out a contract of employment entered into with a client for professional services.

G. Respondent has violated D.R. 7-101(A)(3) in that he intentionally prejudiced and damaged his client during the course of his professional relationship with him.

The hearing committee recommended that respondent be suspended for a period of 12 months to run concurrently with the suspension previously ordered.

The Disciplinary Board regards neglect of a client's matter as a serious violation of the Disciplinary Rules requiring a significant level of discipline. The board concurs with the hearing committee that a one-year suspension is the appropriate discipline in this case but believes that consecutive rather than concurrent suspensions will signify better to respondent and to the members of the Bar in general the gravity with which the board regards the transgression. Further, the board believes that consecutive rather than concurrent suspensions strengthen public confidence in disciplinary procedures.

## RECOMMENDATION

The Disciplinary Board recommends to your honorable court that respondent be suspended for a period of one year beginning upon the expiration of the period of suspension ordered September 25, 1981, i.e. for a period of one year beginning September 25, 1982.

Messrs. Krawitz, Helwig, McDonald and McGinley did not participate in the adjudication.

## ORDER

And now, this March 15, 1984, the recommendation of the Disciplinary Board dated February 22, 1984, is accepted, and it is hereby ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of one year to run consecutively with the one-year suspension imposed on September 25, 1981, at Disciplinary Board No. 42 D.B. 80. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Hutchinson did not participate in this matter.

Mr. Chief Justice Nix and Mr. Justice McDermott dissent and would impose a one-year suspension concurrent with the original suspension entered September 25, 1981.